UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DONTRELL BROTHERS,

               Petitioner,

v.

UNITED STATES OF AMERICA,

               Respondent.

_____/

Case No. 1:07-CV-601
(Criminal Case No. 1:04-CR-196)

HON. GORDON J. QUIST

## OPINION

### I.  Introduction

This Court has before it Dontrell Brothers' ("Petitioner") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  Promptly after the filing of a § 2255 motion, the Court must undertake a preliminary review of the Motion to determine whether it plainly appears from the motion, the attached exhibits and the record of prior proceedings that Petitioner is not entitled to relief in the district court.  Rule 4, Rules Governing § 2255 Cases. If so, the Court shall make an order for its summary dismissal.  *Id.*  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *See Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999) (applying Rule 4 to petition filed under 28 U.S.C. § 2254).  After undertaking the review required by Rule 4, the Court concludes that Petitioner is not entitled to relief.

### II.  Procedural History

On November 22, 2004, Petitioner pled guilty to two counts of distribution of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c), three counts of distribution of five grams

or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and one count of possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).  On May 26, 2005, this Court sentenced Petitioner to 172 months incarceration.  On December 19, 2006, the Court of Appeals affirmed the judgment of this Court. On June 25, 2007, Petitioner timely filed this Motion under 28 U.S.C. § 2255.  On December 17, 2007, Petitioner filed a Motion for Supplemental Pleadings under Federal Rules of Civil Procedure Rule 15(d).

Petitioner claims in his § 2255 motion that: (1) his plea was not knowingly, intelligently, and voluntarily entered into, because of erroneous advice from his counsel regarding an off-the-record plea agreement; (2) he was denied effective assistance of counsel because he failed to receive benefits that were promised to him by his counsel on the condition that Petitioner plead guilty; and (3) he was denied effective assistance of counsel because of his counsel's failure to make proper objections during sentencing.  Petitioner claims in his motion for supplemental pleadings that counsel was ineffective for failing to object to allegedly invalid search warrants.  Petitioner also seeks the return of items seized pursuant to those warrants.

This Court has reviewed the transcript of the plea.  Petitioner is a liar of major proportions. He was fully informed of the charge, his rights, and the possible consequences of his plea.  Without coercion, duress, or a promise of any kind, Petitioner plead guilty *under oath*.  Portions of the transcript are set forth:

> THE COURT: Ms. Shekmer, were there any prior discussions, or is there any agreement pursuant to which the plea is being offered?
>
> MS. SHEKMER: No, Your Honor.  *There is no agreement*.
>
> THE COURT: Do you agree with that, Mr. Moritz?
>
> MR. MORITZ: I do.

2

BY THE COURT:

> Q: Now, Mr. Brothers, has the government or *anyone* else made *any promise or assurance of any kind* that is causing you to plead guilty?
>
> A: *No, sir.*
>
> Q: Has the government made any promise to you in any respect whatsoever, sir?
>
> A: No, sir.

(Plea Tr. at 12-13 (emphasis added).)

BY THE COURT:

> Q: The penalties for these charges are very significant.  As to Count 3, the term of imprisonment is–no mandatory minimum, but up to 30 years imprisonment, supervised release of at least six years, special assessment of $100, and a fine of up to $2 million.
>
> As to count 5, distribution of five grams or more of cocaine base, the penalty– Is that enhancement still there, Ms. Shekmer?
>
> > MS. SHEKMER: Yes, Your Honor.
>
> Q: –is a mandatory minimum–that's not less than 10 years in prison, and you can get sentenced up to life in prison, and not more than a $4 million fine, supervised release of at least eight years, a special assessment of $100.
>
> Distribution of cocaine base in Count 6 is, once again, not more than 30 years, and a $2 million fine, six years of supervised release, special assessment of $100.
>
> Count 7, distribution of five grams or more of cocaine base, not less than 10 years nor more than life, and up to a $4 million fine, eight years of supervised release, a special assessment of $100.
>
> Count 8, distribution of five grams or more of cocaine base, once again, a mandatory minimum of 10 years, up to life in prison, not more than a $4 million fine, at least eight years of supervised release, $100 assessment.
>
> And count 9, possession with intent to distribute five grams or more of cocaine base, not less than ten years nor more than life, and a fine of up to $4 million, at least eight years of supervised release, and a special assessment of $100.

3

The thing is, in this particular offense, Mr. Brothers, you*'re looking at at least 10 years in prison and up to life*, and a fine of up to $4 million–unless you happen to have more money than that; then the fine can be higher when you start adding these up–and at least eight years in prison (sic), and a special assessment of $100 on each of these counts.

(Plea Tr. at 13-14 (emphasis added).)

THE COURT:

Q: In essence, I will have to consider certain factors about you and about this crime. When I do that, I'll be directed to a guideline that will provide a sentencing range of some months between 120 and life in prison. In all likelihood, I will have to sentence you within that range. There are a few circumstances that permit a court to go higher or lower than a guideline. I do not know if any of those are pertinent to your particular case. But in the vast majority of cases that come before me, I must sentence within the guideline range.

\* \* \*

Q: Therefore, I don't think the case you may have heard about, *Blakely*, will affect your sentence all that much. So in your case, it looks to me, at this point in time, that the guideline range will be the sentencing range. But I can't assure you of that. It could be that the guidelines might be held to be mere advice to federal judges, mere guidelines instead of rules as they currently are. *But the one thing you can be assured of at this time is that your sentence will be at least 120 months, and it could be as high as life. Do you understand all of that?*

A: *Yes, sir.*

(Plea Tr. at 17-18 (emphasis added).)

BY THE COURT:

Q: Are you making these pleas of guilty voluntarily and of your own free will?

A: Yes.

Q: Has anyone threatened or forced you to plead guilty?

A: No, sir.

Q: I'll ask again. *Has anyone at all made any promise or assurance of any kind that is causing you to plead guilty–even your own lawyer? Anybody?*

4

A: *No, sir.*

Q: Has anyone reported to you any statement that I made regarding either your plea or the sentence that might be imposed?

A: No, sir.

(Plea Tr. at 21 (emphasis added).)

BY THE COURT:

Q: What did you plead guilty to?

A: I don't know if I pleaded guilty.  They asked me to take the plea bargain for boot camp or take the five years.  So I don't know how it actually went. But I signed the paper for boot camp; and next thing you know, I was in boot camp.

Q: Okay.  But let me ask again–I don't care what the sentence was.  We'll find that out later.  You plead guilty.  What did you plead guilty to?

A: I think it was a delivery charge.

Q: Delivery of what?

A: Of crack cocaine.

Q: Was that a–it must have been an offense that was a felony, because the sentence that's listed here–sentenced to five years on Count 4.  So that's–whether or not you served five years, that's not important, but *it did carry a penalty of more than one year in prison.*

Is that correct?

A: *Yes, sir.*

Q: And that was delivery of crack cocaine again?

A: Yes.

(Plea Tr. at 27-28 (emphasis added).)

To grant Petitioner any relief in this case, in addition to making a mockery out of the oath

that he took before this Court would make a mockery out of the purposes of the Federal Rules of

Criminal Procedure, which were scrupulously followed in this case. If Petitioner's argument is taken seriously, any criminal convicted on a plea could simply argue that he was lying under oath when the plea was entered, that there really was some secret deal, and thereby try to get out of the plea long after the witnesses against him are in other circumstances. (In the instant case, Petitioner admitted under oath several sales to an undercover officer.) The Court asked Petitioner more than once if any promise had been made, and Petitioner was informed that he could be sentenced to life in prison. Petitioner understood all of this. At the time of plea, the Court found that the plea was knowingly and voluntarily made, the finding that Petitioner now wishes to overturn. The Court refers to the following cases: *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986) and *Ramos v. Rogers*, 170 F.3d 560 (6th Cir. 1999). For the reasons stated in those cases, as well as the reasons discussed below, Petitioner's claim is dismissed.

### III.  Petitioner's Invalid Plea Claim is Procedurally Defaulted

In his Memorandum, Petitioner claims the existence of an off-the-record plea agreement, the existence of which he denied at the time of his plea and did not mention at his sentencing, that provided for no enhancement of his sentence, that the amount of drugs used to determine his offense level would be limited to the amounts set forth in the indictment, that the base offense level would be 30 with the acceptance of responsibility points and a criminal history category of III, that his so-called "boot camp" offense[1] would not be used to enhance his sentence or be counted in the criminal history assessment, that there would be no mandatory minimum sentence, and that the guideline range would be no greater than 121 to 151 months. (Pet'r Mem. at 9.) Petitioner claims, incredibly, that he entered into the agreement "with the understanding that both the trial judge and prosecutor

---

[1]Petitioner refers to a 1992 drug possession conviction for which he was sentenced to a five-year period of incarceration, yet ultimately served six and a half months in an alternative incarceration program followed by two years of mandatory supervised release. *See United States v. Brothers*, No. 05-1782, p. 4 (6th Cir. Dec. 19, 2006).

were a party to the agreement," as well as the understanding "that the agreement would not be placed on the record so [Petitioner] should not mention the agreement, if asked, at the plea hearing." *Id.*

Contrary to what Petitioner claims he was entitled to pursuant to the agreement, the Presentence Investigation Report recommended enhancement of Petitioner's sentence based on the "boot camp" offense and a quantity of drugs greater than the amount set forth in the indictment, among other factors. Petitioner claims that throughout the proceedings, his counsel stood mute regarding the alleged promises that he had made in order to get Petitioner to plead guilty. (Pet'r Mem. at 5.) This argument does not avail because Petitioner, himself, denied under oath the existence of any agreement. It is Petitioner's contention that he would not have pleaded guilty had he known that the deal was not possible or was not going to be enforced and therefore Petitioner's plea was not knowingly, intelligently, and voluntarily entered into. (Pet'r Mem. at 11.)

Petitioner raises his invalid plea argument for the first time in this Motion. As the Supreme Court has said, § 2255 petitions are not substitutes for direct appeals. *See Reed v. Farley*, 512, U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994); *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982); *Hunter v. United States*, 160 F.3d 1109, 1114 (6th Cir. 1998). The Supreme Court has imposed strict limitations upon the circumstances under which a guilty plea may be attacked on collateral review. *See Bousley v. United States*, 523 U.S. 614, 620, 118 S. Ct. 1604, 1610 (1998); *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-47 (1984). Because Petitioner failed to challenge the validity of his plea on direct appeal, his claims are procedurally defaulted. *See Bousley*, 523 U.S. at 622, 118 S. Ct. at 1611; *Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999). As such, Petitioner is barred from raising his claims in a § 2255 motion unless he can demonstrate that "cause" and "actual prejudice" existed to excuse his failure to raise the issue on direct appeal, or that a constitutional error at the plea proceedings "has probably resulted in the conviction of one who is actually innocent." *See Bousley*, 523 U.S. at 622, 118 S. Ct. at 1611 (citing

*Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)); *Hampton*, 191 F.3d at 698-99.

To show cause, Petitioner must point to "some objective factor external to the defense" that prohibited him from raising his claims on direct appeal. *See Murray*, 477 U.S. at 488, 106 S. Ct. at 2645. To show prejudice, he must demonstrate an error that worked to his actual and substantial disadvantage. *See Frady*, 456 U.S. at 170, 102 S. Ct. at 1595-96.

Petitioner fails to allege or show that he is actually innocent of the offense for which he pled guilty. Likewise, he fails to allege or show that some external impediment prevented him from pursuing his claim on direct appeal. His only contention is that he feared speaking up about the agreement would jeopardize it. Any such concern was moot after the alleged agreement was not honored and the case was on appeal. Moreover, he cannot show prejudice because the issue is entirely without merit. In order to prevail on his § 2255 motion, Petitioner "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea. . . ." *Schledwitz v. United States*, 169 F.3d 1003, 1011 (6th Cir. 1999) (citing *Brecht v. Abramson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1721 (1993)); *see also Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999).

In this case Petitioner did not contend that the Court failed to follow proper plea colloquy procedures. As a result, any plea agreement consists of only the terms revealed in open court. *See Ramos v. Rogers*, 170 F.3d at 563. There was absolutely no mention, prior to this post-conviction, post-appeal proceeding, of any agreement. Petitioner has provided no objective evidence whatsoever to save his invalid plea claim from procedural default.

### IV.  Ineffective Assistance of Counsel

A criminal defendant must generally raise all claims of error in his first appeal of right, upon pain of waiver. *See Frady*, 456 U.S. at 165, 102 S. Ct. at 1593 (1982). Claims of ineffective

assistance of counsel are an exception to this general rule.  Claims of ineffective assistance of counsel are more properly available in a post-conviction proceeding under 28 U.S.C. § 2255 after the parties have had the opportunity to develop an adequate record on the issue from which the reviewing court is capable of arriving at an informed decision.  *United States v. Rahal*, 191 F.3d 642, 645 (6th Cir. 1999) (citing *United States v. Seymour*, 38 F.3d 261, 263 (6th Cir.1994)).  Consequently, the general rule that a failure to raise an issue on direct appeal operates as a waiver to assert the issue in a § 2255 motion does not apply to claims of ineffective assistance of counsel.

The United States Court of Appeals for the Sixth Circuit has summarized the test for ineffective assistance of counsel as follows:

> A two-prong test establishes ineffective assistance of counsel: 1) the defendant must show that his counsel's performance was deficient; and 2) prejudice must have resulted to counsel's defendant from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).  The first prong requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  The second prong requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial.  *Id.*

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed."  *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052.

> To establish prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694, 104 S. Ct. 2052.  To determine if Kinnard was prejudiced by his attorney's performance, it is necessary to determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome.  *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L.Ed.2d 180 (1993).

*Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002).

When ineffective assistance of counsel allegations are raised in the context of a plea process, the two-pronged analysis from *Strickland* still applies with a minor revision. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366 (1985). *See also Nagi v. United States*, 90 F.3d 130, 135-36 (6th Cir. 1996). The first prong of *Strickland* remains virtually the same. *Hill v. Lockhart, supra*, 474 U.S. at 58. The second prong or "prejudice" requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. Petitioner must show a reasonable probability that, but for counsel's errors, he would have *insisted on going to trial*. *Id.*, *see also Roe v. Lucio Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029 (2000).

As discussed below, Petitioner raises two claims for ineffective assistance. Because he cannot demonstrate prejudice, as required by *Strickland,* both claims lack merit.

### A. Petitioner Was Not Prejudiced by Counsel's Alleged Failure to Fulfill the Terms of an Out-of-Court Plea Agreement

Petitioner claims that he was denied effective assistance of counsel because, "He was induced to plead guilty upon reliance of a promises (sic) that were not enforced," and that "he would not have plead (sic) but for the promises." (Pet'r Mem. at 19.) Thus, Petitioner argues, both prongs of the *Strickland* test–deficiency and prejudice–have been met.

Given the record in this case, Petitioner has failed to establish prejudice under *Strickland*. He has failed to show that he would have insisted on going to trial but for the alleged agreement entered into between him, the Prosecutor, and the Judge. This is particularly true since Petitioner entered his guilty plea after the Government and Petitioner's counsel denied the existence of any such agreement and after stating under oath that no one had made any promise or assurance of any kind that caused him to plead guilty. Again, Petitioner has shown no reason why his plea or sentence should be set aside, other than his own alleged subjective impressions regarding an off-the-record

plea agreement.  Binding him to his statements in response to the Court's exhaustive inquiry, as required by *Baker* and *Ramos*, he has shown no prejudice.

### B.  Petitioner Was Not Prejudiced by Counsel's Failure to Object to the "Boot Camp" Offense

Petitioner claims that his 1992 Illinois conviction, for which he completed a "boot camp" program, should not have operated to assess three criminal history points as a prior sentence of at least one year and one month pursuant to U.S.S.G. § 4A1.1(a).  And thus, his counsel's allegedly overlooked objection to the three point assessment resulted in a denial of effective assistance of counsel.

Any contention that Petitioner was somehow prejudiced by his counsel's failure to object to the "boot camp" assessment is groundless.  Petitioner challenged the Court's three point criminal history assessment on direct appeal.  *See United States v. Brothers,* No. 05-1782 (6th Cir. Dec. 19, 2006).  The Court of Appeals upheld this Court's guideline calculation.[2]  Petitioner has failed to establish prejudice under *Strickland*; even had his counsel objected, the result would have been the same.

### V.  Supplemental Pleadings

Petitioner has filed a motion for supplemental pleadings.  Petitioner's motion is granted, but his claims are dismissed for lack of merit.  Petitioner claims he was denied effective assistance because his counsel failed to object to search warrants Petitioner believes were deficient.  Petitioner argues that two Michigan issued search warrants (Pet'r Supp. Mem. Attach. E-2, E-3) failed to meet the Fourth Amendment's particularity requirement because they authorized officers to conduct

---

[2]Furthermore, the Illinois "boot camp" program has been held not to constitute a suspended sentence for purposes of the Sentencing Guidelines.  *See United States v. Gajdik,* 292 F.3d 555, 560 (7th Cir. 2002).

searches of residences belonging to his sister and his fiancee and because officers seized items Petitioner claims did not belong to him.

"The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement of the Fourth Amendment is whether the description is such that the officers can with reasonable effort ascertain and identify the items intended to be seized." *Baranski v. Fifteen Unknown Agents of the BATF*, 452 F.3d 433, 452 (6th Cir. 2006) (citing *United States v. Watkins*, 179 F.3d 489, 494 (6th Cir. 1999) (internal quotations omitted). "The degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988). In addition, "A search does not become invalid merely because some items not covered by a warrant are seized." *Id.* at 1383 (citing *United States v. Lambert*, 771 F.2d 83 (6th Cir. 1985).)

In this case, given the nature of the crime under investigation–crack dealing–the warrant described the places to be searched and the items to be seized as well as was reasonably possible. Moreover, both the places to be searched and the items to be seized were supported with probable cause, as sworn by a law enforcement official. Because both warrants met the particularity requirement, Petitioner cannot show that he was prejudiced by counsel's decision not to challenge them.

Petitioner also seeks the return of all items seized during execution of the state search warrants. However, Petitioner's claim for the return of property held in state custody is not cognizable in a § 2255 motion.

## VI. No Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing

12

of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2255 Cases is a determination that the § 2255 motion, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Commissioner of Correction of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The Court finds that reasonable jurists could not find that this Court's dismissal of Petitioner's claim was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

13

**VII.  Conclusion**

For the reasons set forth above, Petitioner's § 2255 Motion (docket no. 1) will be DISMISSED pursuant to Rule 4 of the Rules Governing § 2255 Cases.  In addition, a certificate of appealability will be DENIED as to each issue raised by Petitioner because he has failed to make a "substantial showing of a denial of a constitutional right."

A separate Order will issue.


Dated:  January 3, 2008                              _____/s/ Gordon J. Quist_____
                                                                 GORDON J. QUIST
                                                                 UNITED STATES DISTRICT JUDGE